IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| CRUM & FOSTER SPECIALTY INSURANCE COMPANY *as subrogee of Two Sons International*, LLC,<br><br>    Plaintiff,<br><br>  vs.<br><br>SHRENO LIMITED *(Glass Division)*,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:24-cv-04705-DCN<br><br>**ORDER** |

  This matter is before the court on defendant Shreno Limited's ("Shreno") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). ECF No. 11. For the reasons set forth below, the court grants the motion.

## I.  BACKGROUND

  This action arises out of a breach of warranty dispute. ECF No. 1, Compl. According to its complaint, Crum & Foster Specialty Insurance Company ("C&F") is an insurance company incorporated in New Jersey with its principal place of business in New Jersey. Id. ¶ 1. At all times relevant to this action, C&F insured Two Sons International, LLC ("TSI") through a product recall insurance policy. Id. TSI is a company based in South Carolina and conducts business throughout the United States. Id. Shreno is a foreign entity organized under the laws of India with its principal place of business in India. Id. ¶ 2. Shreno is in the business of manufacturing and selling glass containers. Id.

1

C&F alleges that Shreno entered a business relationship with TSI. Id. ¶ 4. Pursuant to their relationship, Shreno contracted to manufacture and sell TSI approximately five-and-a-half million glass containers over ten separate purchase orders. Id. ¶¶ 4–5. Each purchase order expressly noted that TSI was located in South Carolina and that the glass containers would be shipped to the United States. Id. ¶ 4. According to C&F, Shreno consigned the glass container shipments to a shipper for delivery to TSI via the multiple ports—including, the port of Charleston, South Carolina as well as other ports in the United States and Canada. Id. ¶ 12; ECF No. 12 at 2. Upon receipt of the shipments, TSI filled the glass containers with wax and sold them as candles to retailers. Id. ¶ 12. One of TSI's retail customers notified TSI of a significant level of glass failures in the candles. Id. Thereafter, TSI recalled all the candles that it had sold that used a glass container manufactured by Shreno. Id.

As part of TSI's recall investigation, a glass testing laboratory in the United States performed tests to determine whether the glass was suitable for its intended use. Id. ¶ 13. The testing laboratory concluded that that the glass containers did not meet the appropriate ASTM specifications. Id. Subsequently, TSI destroyed or disposed of the recalled glass containers. Id. ¶ 14. C&F paid TSI for the losses that resulted from the recall of the Shreno glass containers pursuant to its product recall insurance policy. Id. ¶ 15. C&F—as subrogee of TSI—now seeks recovery from Shreno for its coverage payment made to TSI. Id. ¶ 16.

C&F filed its complaint on August 29, 2024. ECF No. 1, Compl. It alleges a single cause of action for breach of warranty. Id. ¶¶ 17–21. Shreno filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal

jurisdiction on October 28, 2024. ECF No. 11. C&F responded in opposition on November 12, 2024, ECF No. 12, and Shreno replied on November 18, 2024, ECF No. 14. The court held a hearing on the motion on January 7, 2025. ECF No. 15. As such, the matter is fully briefed and is now ripe for the court's review.

## II. STANDARD

A party may challenge the court's power to exercise personal jurisdiction over it through a motion under Federal Rule of Civil Procedure 12(b)(2). "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). However, the plaintiff's burden when confronted with a particular jurisdictional challenge varies depending on the stage of the litigation, the posture of the case, and the evidence before the court. Id.; Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016); Sec. & Exch. Comm'n v. Receiver for Rex Ventures Grp., LLC, 730 F. App'x 133, 136 (4th Cir. 2018).

When a court rules on a personal jurisdiction issue presented in a pretrial motion prior to holding an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Combs, 886 F.2d at 676. In such circumstances, much like when reviewing motions made pursuant to Rule 12(b)(6), "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. "In doing so, however, the court need not 'credit conclusory allegations or draw

3

farfetched inferences.'" Masselli & Lane, PC v. Miller & Schuh, PA, 215 F.3d 1320 (4th Cir. 2000) (unpublished table decision) (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)). "Unlike under Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." Hawkins, 935 F.3d at 226.

If the plaintiff's allegations are sufficient to make a prima facie case for personal jurisdiction, the court may deny the Rule 12(b)(2) motion and later revisit the question or defer ruling on the motion until the parties have had the opportunity to develop the factual record. Combs, 886 F.2d at 676; Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196–97 (4th Cir. 2018); Mylan Lab'ys Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). District courts have broad discretion to allow discovery to help resolve personal jurisdiction issues, Mylan Lab'ys, 2 F.3d at 64, and jurisdictional discovery should normally be permitted "[w]hen the Plaintiff's claim does not appear to be frivolous," Cent. Wesleyan Coll. v. W.R. Grace & Co., 143 F.R.D. 628, 644 (D.S.C. 1992), aff'd 6 F.3d 177 (4th Cir. 1993). Yet, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003); see also Pandit v. Pandit, 808 F. App'x 179, 183 (4th Cir. 2020) ("Jurisdictional discovery is proper when the plaintiff has alleged sufficient facts to suggest the possible existence of personal jurisdiction."). Moreover, "[a] party is not entitled to discovery that would be futile or otherwise inadequate to establish a sufficient basis for jurisdiction." Seaside Farm, Inc. v. United States, 842 F.3d

4

853, 860 (4th Cir. 2016). Once the factual record is developed and presented to the court, either at an evidentiary hearing or at trial, the plaintiff has the burden of proving facts supporting jurisdiction by a preponderance of the evidence. Grayson, 816 F.3d at 268.

### III.   DISCUSSION

Shreno moves to dismiss C&F's complaint under two alternative theories. First, Shreno claims that this court does not have personal jurisdiction over it and asserts that that the claims against them should be accordingly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2). ECF No. 11-3 at 6–19. Second, Shreno alternatively argues that the case should be dismissed under the doctrine of forum non conveniens because India is a better forum to litigate this dispute. Id. at 19–24. The court will begin its analysis by considering Shreno's argument on personal jurisdiction. Ultimately, the court finds that it does not have personal jurisdiction over Shreno and, therefore, declines to consider Shreno's alternative forum non conveniens argument.

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. Thus, in evaluating a challenge to personal jurisdiction, the court engages in a two-step analysis. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). First, it must find that the forum state's long-arm statute authorizes the exercise of jurisdiction under the facts presented. Id. Second, if the statute does authorize jurisdiction, then the court must determine if its exercise of personal jurisdiction is consistent with due process. Id. South Carolina's long-arm statute extends its reach to the outer limits allowed by the Due Process Clause. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002); Cockrell v. Hillerich & Bradsby Co., 611 S.E.2d 505, 508 (S.C. 2005); see S.C. Code Ann. § 36-2-

5

801, et seq. Consequently, the two-step inquiry compresses into a single question: whether the court's exercise of personal jurisdiction comports with due process. Maseng v. Lenox Corp., 483 F. Supp. 3d 360, 364–65 (D.S.C. 2020).

Personal jurisdiction over a nonresident defendant can be either specific or general. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). General jurisdiction arises when the nonresident defendant's contacts with the forum state "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)). General jurisdiction may be exercised even when the suit is unrelated to the defendant's contacts within the forum state. See S.C. Code Ann. § 36-2-802; Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 416 (1984). C&F does not argue that the court has general jurisdiction, so the court will limit its analysis to whether it may exercise specific jurisdiction over Shreno. See ECF No. 12 at 3–9.

In contrast to general jurisdiction, specific jurisdiction may only be exercised when a cause of action is related to the defendant's activities within the forum state. See S.C. Code Ann. § 36-2-803; Helicopteros Nacionales, 466 U.S. at 416. Exercising specific jurisdiction does not comport with due process unless the defendant has purposefully established sufficient "minimum contacts" with the forum state and the exercise of jurisdiction comports with notions of "fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985). A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Minimum

contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475. Upon a showing of the defendant's purposeful availment, the fairness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy. World-Wide Volkswagen, 444 U.S. at 292.

Thus, the Fourth Circuit applies a three-part test when evaluating the propriety of a court exercising specific jurisdiction: (1) whether the defendant purposely availed itself of the privileges of conducting activities in the forum state and thus invoked the benefits and protections of its laws, (2) whether the plaintiff's claims arise out of or relate to those forum-state activities, and (3) whether the exercise of jurisdiction is constitutionally reasonable. Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001). "If the plaintiff meets the first two prongs, then the burden shifts to the defendant to show that exercising jurisdiction would be unreasonable." White ex rel. White v. Aetna Life Ins. Co., 519 F. Supp. 3d 253, 259 (W.D.N.C. 2021). The plaintiff must ultimately prevail on all three prongs to show that the exercise of specific jurisdiction over a defendant comports with due process. Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016).

Turning to the first prong of the Nolan test, the Fourth Circuit determines whether a nonresident defendant has purposefully availed itself of the privilege of conducting business in a forum state by looking to a list of several nonexclusive factors:

(1) "whether the defendant maintains offices or agents in the forum state;"
(2) "whether the defendant owns property in the forum state;" (3) "whether

7

>the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum."

Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 560 (4th Cir. 2014) (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009)). "A defendant's actions that are directed at the forum state in only 'a random, fortuitous, or attenuated way' are insufficient to support jurisdiction." ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 392 (4th Cir. 2012) (quoting ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997)).

Shreno contends that C&F has not pleaded any allegations that could be considered sufficient minimum contacts with South Carolina for this court to exercise specific personal jurisdiction. ECF No. 11-3 at 7–19. Specifically, Shreno argues that C&F's purposeful availment argument must fail because Shreno manufactured, sold, and delivered the glass containers—all of the events giving rise to C&F's claims against Shreno—wholly within India. Id. at 8–13. Shreno provides the following arguments with respect to the Universal Leather purposeful availment factors: (1) Shreno does not have any offices, business operations, or contracts in South Carolina and does not advertise or solicit business in the state; (2) Shreno does not own, lease, or possess property in South Carolina; (3) Shreno has only communicated with one of TSI's affiliate corporations through agents in India; (4) Shreno fulfilled the purchase orders wholly in India within one year; (5) Shreno and TSI did not agree that the law of South Carolina would apply any dispute; (6) Shreno has not communicated in-person with any TSI

8

representative in South Carolina; (7) Shreno and TSI engaged in limited discussion via email and phone calls; and (8) all of Shreno's contractual duties were performed in India and its deliveries of the glass container shipments were made F.O.B. to two ports in India where TSI received, paid for, and shipped the glass container shipments to multiple ports of discharge in the United States and Canada. Id.

In response, C&F argues that Shreno purposefully availed itself of the privileges and protections of South Carolina law based on Shreno's business relationship with TSI regarding the glass containers. ECF No. 12 at 5–6. C&F states that "Shreno intentionally placed more than four million (4,000,000) glass jars on ships it knew and intended to be bound for Charleston, South Carolina." Id. at 5. Additionally, C&F contends that some of the shipment invoices list Charleston, South Carolina as the port of discharge and that the purchase orders were executed over the course of one year. Id. at 5–6. However, C&F fails respond to any of Shreno's purposeful availment arguments and does not mention or relate its allegations to the Universal Leather factors. Likewise, C&F fails to tie its allegations to any relevant legal authority.

The jurisdictional allegations of C&F's complaint likewise fall short. See Compl. First, C&F alleges that "Shreno knowingly and intentionally supplied manufactured goods to a company in South Carolina." Id. ¶ 4. Second, C&F claims "[b]y contracting to supply things in South Carolina, and by manufacturing goods with the reasonable expectation that those goods are to be used in South Carolina, Shreno purposely directed its activities toward South Carolina." Id. ¶ 5. Again, C&F provides no factual support for its allegations.

C&F has not alleged that any of the Universal Leather factors weigh in favor of this court exercising specific personal jurisdiction over Shreno. Even if the court were to liberally construe C&F's argument, its allegations appear to focus on only two factors: the fourth factor—Shreno's business activities in South Carolina—and the eighth factor—whether Shreno performed the purchase agreements in South Carolina. The court considers C&F's arguments as to those two factors in turn, but ultimately finds that, even with reference to those two factors, C&F has not established that this court has specific personal jurisdiction over Shreno.

As for the fourth factor, C&F's allegations could be understood as stating that Shreno deliberately directed its business activity to South Carolina because it contracted to manufacture glass containers for TSI, a South Carolina company. See Compl. ¶¶ 4, 5; see also ECF No. 12 at 6. To the extent these allegations are not conclusory, they are insufficient to show purposeful availment. A single contract with a resident of the forum state may sometimes be sufficient to establish minimum contacts, but such is only the case in "rare" instances and only when the contract "created continued obligations between [the defendant] and residents of the forum." Pet Specialties, LLC v. Navisiontech, Inc., 2019 WL 4773623, at *5 (M.D.N.C. Sept. 30, 2019) (quoting Perdue Foods, 814 F.3d at 190). "In Perdue Foods, the Fourth Circuit contrasted the 20-year franchise agreement that gave rise to personal jurisdiction in Burger King with an agreement that did not 'launch any ongoing collaboration or promise frequent interactions,' holding that the later did not establish 'significant or long-term business activities in the forum state." Id. (citations omitted). Put simply, "[a] contract with a resident of a forum state does not automatically constitute sufficient contacts to support

the forum's assertion of specific jurisdiction, even where the dispute arises from the contract." Le Bleu Corp. v. Standard Cap. Grp., Inc., 11 F. App'x. 377, 380 (4th Cir. 2001) (citing Burger King, 471 U.S. at 478).

The court finds that the fourth factor weighs against a finding of purposeful availment. C&F fails to show that contract created any significant or long-term business activities in South Carolina. See Perdue Foods, 814 F.3d at 190–91. Likewise, the contract did not produce any "continuing obligations" between Shreno and South Carolina; a factor the Fourth Circuit often finds is an adequate basis to establish purposeful availment. See id. Rather, the contract was the product of single business transaction, entered in India, and executed within a relatively short time frame. Cf. Burger King, 471 U.S. at 480. Therefore, the fourth factor weighs against a finding of purposeful availment.

As for the eighth factor, C&F's allegation that Shreno performed the purchase orders in South Carolina is likewise insufficient. C&F's allegation could be interpreted as asserting that Shreno shipped the glass containers to South Carolina, and thus Shreno purposefully availed itself of the privilege of doing business in South Carolina. See Compl. ¶¶ 4, 5; see also ECF No. 12 at 5. To support its contention, C&F contends that some of the commercial shipping invoices for the purchase orders state that the port of discharge for the glass container shipments was Charleston, South Carolina. See ECF No. 11-1 at 23–28, 32–55, 59–60, 64–66, 70–78, 85.

For purposes of the eighth factor, the court looks to whether the performance of contractual duties was to occur within the forum. Importantly, where contract performance is asserted as the basis of a defendant's contacts with a forum, "the

11

connection between the defendant and the forum must arise out of contacts that the defendant himself creates with the forum State." Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 143 (4th Cir. 2020). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." Walden v. Fiore, 571 U.S. 277, 286 (2014). Here, C&F provides no adequate factual allegations for the court find that any action of Shreno's fulfilment of the purchase orders—the manufacturing, sale or delivery of the glass containers—was to occur in South Carolina. C&F does not contest that that Shreno manufactured the glass containers wholly within its factory in India or that TSI completed each sale by making payments in India upon taking delivery of the shipments there. See ECF No. 12 at 1–2. Regarding delivery, each commercial shipping invoice states that Shreno was to deliver the glass container shipments either "F.O.B MUNDRA" or "F.O.B. HAZIRA"—two ports in India. See ECF No. 11-1. In its brief, C&F concedes that the TSI accepted delivery and took possession of each shipment in India, and that TSI arranged for the shipments to be delivered to multiple ports in the United States and Canada. See ECF No. 12 at 1–2, 6. Thus, Shreno's contractual performance of fulfilling the purchase orders concluded in India.

Because the court's minimum contacts inquiry is defendant-focused, TSI's shipment of Shreno's glass containers into the port of Charleston, South Carolina is insufficient to prove purposeful availment. See Walden, 571 U.S. at 284; First Reliance Bank v. Romig, 2014 WL 5644602, at *3 (D.S.C. Nov. 4, 2014). Therefore, the eighth factor weighs against a finding of purposeful availment.

Altogether, C&F has not demonstrated a prima facie case for purposeful availment. As such, C&F has failed to show that Shreno had sufficient minimum

contacts for this court to exercise personal jurisdiction over it, and the court dismisses this case accordingly.  See Perdue Foods, 814 F.3d at 189.  As such, the court declines to consider Shreno's alternative forum non conveniens argument.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** Shreno's motion and **DISMISSES** this case.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**March 3, 2025**
**Charleston, South Carolina**